# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| **VICKIE RAWLINS,** | ) | CASE NO: 4:21-cv-00660-RLW |
| on behalf of herself and all others | ) | |
| similarly situated, | ) | JUDGE: RONNIE L. WHITE |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **ESURANCE PROPERTY AND** | ) | |
| **CASUALTY INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | | |

## DEFENDANT ESURANCE PROPERTY AND CASUALTY INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF <u>ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

## BACKGROUND

Plaintiff submitted a first party automobile physical damage claim to her insurer, Esurance Property and Casualty Insurance Company ("Esurance"), in March 2016. Esurance allegedly treated the claim as a total loss, and paid the Plaintiff a total amount of $5,302.00 according to the express terms of the insurance policy ("Policy"). Five years later, Plaintiff filed this Class Action Complaint ("Complaint"), attempting to state a cause of action for breach of contract based on Esurance's alleged failure to include vehicle sales tax ("Vehicle Sales Tax") as part of the payment made to her following the loss. Plaintiff contends that Vehicle Sales Tax must be paid because it is allegedly inherently included within the "actual cash value" ("ACV") of the vehicle. The Complaint should be dismissed, however, because: (1) Missouri law does not compel payment of Vehicle Sales Tax by an *insurer*, but instead, permits an insured to receive a credit or refund for Vehicle Sales Tax from the *state* if he/she purchases a replacement vehicle following a total loss; (2) Plaintiff lacks standing, as she does not plead the existence of any injury or actual controversy arising from the alleged nonpayment of Vehicle Sales Tax; and (3) under the facts alleged, the express language of the Policy does not require payment of Vehicle Sales Tax in connection with the relevant loss.

Over the last few years, courts in several different state and federal jurisdictions—including Illinois, Ohio, Texas, New York, Wisconsin, and Pennsylvania[1]—have dismissed numerous nearly identical putative class actions filed against various insurance companies, and have done so even without the existence of an explicit statute, like the Missouri one applicable here (Mo. Rev. Stat. §144.027), that permits an insured who purchases a replacement vehicle following a total loss to receive a credit or refund from the Missouri Department of Revenue for any Vehicle Sales Tax. If Plaintiff were to receive this available credit or refund *and* her claimed

---

[1] *See infra*, pp. 10-14.

damages from Esurance in this action, that would amount to double recovery, which is directly contrary to Missouri law and the express terms of the Policy. Accordingly, the application of Mo. Rev. Stat. §144.027, in addition to the well-reasoned decisions from numerous courts throughout the country, demonstrate why dismissal is appropriate here.

## COMPLAINT ALLEGATIONS

Esurance offers private passenger automobile insurance that includes collision physical damage coverage providing for payment when a covered vehicle is determined to be a "total loss." (*See* Compl., ¶ 9-11.) The Complaint alleges that Esurance issued a Policy insuring Plaintiff's 2002 Toyota RAV4. (*See id*., ¶ 14; a copy of the Policy is attached as **Ex. 1**.)[2] Three portions of the Policy are relevant here: (1) the auto collision insurance coverage provision; (2) the limit of liability provision; and (3) the payment of loss provision.

First, the auto collision insurance coverage provision and corresponding definitions affirmatively grant coverage for loss to "*[y]our*" "*covered auto*," which means the auto "[which is] stated in '*your*' Declarations page," *i.e.,* the 2002 RAV4:

> **DEFINITIONS APPLICABLE TO ALL COVERAGES**
>
> 7. "***Covered auto***" means: [a]ny vehicle identified in '***your***' Declarations page….
>
> \* \* \*
>
> 10. "***Loss***" means:
>     **A.** Sudden, direct, and unintended physical damage; or
>     **B**. Theft.

---

[2] A copy of the Policy was also attached to the Complaint as Exhibit A, and is therefore part of the Complaint allegations for purposes of this Motion to Dismiss.

2

### INSURING AGREEMENT: COLLISION COVERAGE

… [I]f '*you*' pay the premium for Collision Coverage, '*we*' will pay for a sudden, direct, and accidental '*loss*' to: **A. '[y]our' 'covered auto'** for which Collision Coverage has been purchased, as stated in '*your*' Declarations page….[3]

(*See* Policy, **Ex. 1**, pp. 2, 13) (bold and italics in original) (underline added).

Second, in the "Limit of Liability" section, the Policy specifies, in relevant part, that Esurance need not pay more than the *lesser* of the actual cash value of the vehicle; the amount necessary to repair the vehicle; *or* the amount necessary to replace the vehicle:

### LIMIT OF LIABILITY

1. '*Our*' limit of liability for '*loss*' will be the lesser of the:
   A. [L]imit of liability shown on '*your*' Declarations page;
   B. Actual cash value of the stolen or damaged property;
   C. Amount necessary to repair the property to its pre-loss physical condition; or
   D. Amount necessary to replace the property with other property of like kind and quality….

2. An adjustment for depreciation and physical condition, which may also be referred to as betterment, wear and tear, or prior damage, will be made in determining actual cash value in the event of a total loss.

(*Id.*, p. 20) (bold and italics in original) (underline added).

Third, the Policy states that, if Esurance pays for a "loss"[4] in money, the payment will include "applicable sales tax for the damaged or stolen property":

### PAYMENT OF LOSS

'*We*' may, at '*our*' expense, return any stolen property to:

1. '*You,*' or

---

[3] The Policy Declaration Pages indicate that Auto Collision Insurance Coverage is provided under Plaintiff's Policy. (*See* Policy, **Ex. 1**.)

[4] As set forth above, "Loss" is defined as "A. [s]udden, direct, and unintended physical damage; or B. [t]heft." (*Id.*, p. 2.)

>    **2**.  The address shown on the Declarations page.
>
>    If *'we'* return stolen property, *'we'* will pay for any damage resulting from the theft. *'We'* may keep all or part of the property at an agreed or appraised value. *'We'* may pay for a 'loss' in money or repair or replace the damaged or stolen property. If *'we'* pay for '*loss*' in money, *'our'* payment will include the <u>applicable</u> sales tax for the damaged or stolen property.

(*Id*., p. 21) (bold and italics in original) (underline added).

Plaintiff alleges that, on or about March 30, 2016, her vehicle was in an accident and "sustained loss or damage," after which she filed a first-party claim with Esurance. (*See* Compl., ¶ 15.) Esurance allegedly determined that the vehicle was a total loss, and paid to Plaintiff the "adjusted value" amount of $5,788.00 plus $14.00 for "fees" less $500.00 for the Policy deductible, for a net amount of $5,302.00. (*See id*., ¶¶ 16, 19.) This total amount purportedly did not include any amounts for Vehicle Sales Tax. (*Id*., ¶ 19.) Plaintiff supposedly does not challenge the "adjusted value" calculation, the payment of "fees," or the application of the Policy deductible. (*See* Compl.) However, Plaintiff contends that Esurance was required to include $411.70 for Vehicle Sales Tax in its payment, but wrongfully did not. (*Id*., ¶¶ 18-19.)

## <u>LEGAL STANDARDS</u>

### *Lack Of Standing Under Fed. R. Civ. P. 12(b)(1)*

Under Fed. R. Civ. P. 12(b)(1), a court will dismiss an action when it lacks subject matter jurisdiction. Under Article III of the Constitution, a federal court may only adjudicate "actual 'cases' and 'controversies.'" *See Allen v. Wright*, 468 U.S. 737, 750 (1984). In order to meet the "cases and controversies" requirement, a plaintiff must allege that he/she: "'(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Duqum v. Scottrade, Inc*., No. 4:15-

4

CV-1537, 2016 WL 3683001, *2 (E.D. Mo. July 12, 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).[5]

### *Failure To State A Claim Under Fed. R. Civ. P. 12(b)(6)*

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Plaintiff must allege facts that raise a right to the relief sought "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations").  In order to avoid dismissal, Plaintiff must allege "sufficient factual matter" to "'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted).[6]  Factual allegations that are "merely consistent with," or that are simply "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citations omitted).

### *Prerequisites For Breach Of Contract*

The Complaint alleges that Esurance breached the Policy by failing to pay Vehicle Sales Tax as part of its payment for Plaintiff's vehicle after the loss. (*See* Compl., ¶¶ 1-4, 30-36.)  To bring a viable breach of contract claim under Missouri law, a plaintiff must adequately plead: "(1) the existence of an enforceable contract between the parties; (2) mutual obligations arising under the terms of the contract; (3) one party's failure to perform the obligations imposed by the contract; and (4) the resulting damage to the other party." *Midwest Bankcentre v. Old Republic Title Co.*, 247 S.W.3d 116, 128 (Mo. Ct. App. 2008).

---

[5] *See also McClain v. Am. Economy Ins. Co.*, 424 F.3d 728, 731 (8th Cir. 2005) (the alleged "injury-in-fact" must be "actual or imminent, not conjectural or hypothetical") (internal citations omitted).
[6] *See also Pike Grain Co., Inc. v. Peters*, No. 2:13-CV-51, 2013 WL 3867217, at *1 (E.D. Mo. July 24, 2013) (a plaintiff must plead "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (internal citations omitted).

**ARGUMENT**

I. **There Is No Missouri Law That Requires Esurance to Pay Vehicle Sales Tax; In Fact, There Is A Missouri Statute That Enables An Insured To Receive A Vehicle Sales Tax Credit Or Refund From The State If A Replacement Vehicle Is Purchased Following A Total Loss, Which Obviates Any Such Duty By The Insurer.**

Plaintiff pleads that sales tax is a required part of the cost to purchase a replacement of a "total loss" vehicle in Missouri. (*See* Compl., ¶¶ 17-19.) There is no Missouri statute or regulation that imposes an independent obligation for an *insurer* to pay Vehicle Sales Tax. On the contrary, there is actually a Missouri statute that enables an insured to receive a Vehicle Sales Tax credit from the Missouri Department of Revenue ("DOR") in connection with the purchase of a replacement vehicle following a total loss if the insured purchases a replacement vehicle. *See* Mo. Rev. Stat. § 144.027.[7] Further, if an insured in Missouri mistakenly pays Vehicle Sales Tax on a replacement vehicle, he/she can request a full refund by submitting a "Request for Refund of Taxes or Fees Paid on Vehicle (Form 426)"—found on the DOR's public website—within ten years from the date any such Sales Tax was paid by the policyholder. *See* https://dor.mo.gov/forms/426.pdf (last visited July 8, 2021.)

Accordingly, a private passenger automobile insured in Missouri never has to pay *any* Vehicle Sales Tax in connection with a total loss claim. *See Forney v. Dir. of Rev.*, No. 06-1761, 2007 WL 704481, *1 (Mo. Admin. Hearing Comm'n Jan. 31, 2007) ("[u]nder this statute, if a buyer pays tax on the whole price of [a replacement] vehicle, the buyer has paid too much tax.") If Plaintiff, notwithstanding the fact that she has not alleged that she actually incurred any Vehicle Sales Tax, has, indeed, already recovered Vehicle Sales Tax from the DOR, her claim

---

[7] Mo. Rev. Stat. §144.027 provides, in relevant part: "When a motor vehicle . . . for which all sales or use tax has been paid is replaced due to theft or a casualty loss in excess of the value of the unit, the [D]irector [of Revenue] shall permit the amount of the insurance proceeds plus any owner's deductible obligation . . . to be a credit against the purchase price of another motor vehicle . . . which is purchased or is contracted to purchase within [180] days of the date of payment by the insurance company as a replacement motor vehicle . . ."

6

here is moot because "[i]t is well settled in Missouri that a party cannot be compensated for the same injury twice." *Ross v. Holton*, 640 S.W.2d 166, 173 (Mo. Ct. App. 1982); *see also Stewart v. Sioux City & New Orleans Barges Lines, Inc.*, 431 S.W.2d 205, 209 (Mo. 1968) ("Only one recovery for the injuries sustained may be had."). Clearly, the Missouri legislature could not possibly have intended for both the DOR *and* private passenger automobile insurers to be responsible for paying Missouri insureds for *the exact same thing* in direct contravention of Missouri law. And, not surprisingly, the Policy itself expressly states that "[n]o one will be entitled to duplicate payments for any elements of damages under this [P]olicy or any other source." (Policy, **Ex. 1**, p. 21.)

To the extent that Plaintiff has not obtained a Vehicle Sales Tax credit or rebate from the DOR, she can—as described above—still apply for one utilizing Form 426, available on the DOR website. If Plaintiff is eligible for the Vehicle Sales Tax refund or credit, but chooses not to obtain it, her claim should be dismissed for failure to mitigate damages. *See Cunningham v. Cunningham,* 805 S.W.2d 363, 365 (Mo. Ct. App. 1991) (stressing that "one damaged through alleged breach by another of some legal duty or obligation [has to] make reasonable efforts to minimize the resulting damage") (internal citation omitted).[8] Either way, Plaintiff's claim is precluded by Missouri law.

Relatedly, Plaintiff's Complaint fails as a matter of law because she lacks standing. The express language of the Policy only requires payment of sales tax when it is "***applicable***," *i.e.*, after sales tax has actually been paid. (*See* Policy, **Ex. 1**, p. 21) ("If '***we***' pay for '***loss***' in money, '***our***' payment will include the applicable sales tax for the damaged or stolen property.") (bold

---

[8] Plaintiff would also be in breach of the "cooperation clause" contained in the Policy, which requires that, following a "loss," she must "[c]ooperate with [Esurance] in the investigation, settlement, and defense of any claim or lawsuit." *See* Policy, **Ex. 1**, p. 22. Such cooperation by Plaintiff is a precondition to coverage under the Policy. *See id*.

7

and italics in original) (underline added).  When interpreting an insurance policy, a court is required to give the policy's terms their "ordinary meaning" unless a term is defined in the policy, it is ambiguous, or "it plainly appears that a technical meaning was intended." *See Farmland Indus. Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 508 (Mo. 1997).  Where a term is undefined in an insurance policy, courts look to the dictionary definition in order to determine its ordinary meaning.  *See Scottsdale Ins. Co. v. Olivares*, 614 S.W.3d 65, 70-71 (Mo. Ct. App. 2020).  The word "applicable" is defined as "capable of or suitable for being applied." *See* Merriam-Webster, https://merriam-webster.com/dictionary (last visited July 9, 2021).  The Supreme Court analyzed the meaning of the term "applicable" in *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61 (2011).  In considering whether a debtor could claim certain car-related expenses as exempt from bankruptcy proceedings, the Court rejected the debtor's position that it could discharge potential car-related expenses that were not yet incurred, finding that such expenses are only "applicable" if they are actually incurred.  *Id*. at 70 ("If Congress [in the text of the relevant statute] had not wanted to separate in this way debtors who qualify for [a particular] allowance from those who do not, it could have omitted the term 'applicable' altogether.")  As in *Ransom*, Vehicle Sales Tax here is only "applicable" if it is actually **incurred**.  *See also Pappas v. Auto Club Ins. Ass'n*, No. 20 CV 983, 2020 U.S. Dist. LEXIS 106832, *11-15 (N.D. Ill. June 18, 2020) (in granting dismissal of a similar complaint, the court construed an Illinois administrative code provision providing that, like the Policy here, only "applicable Sales Taxes (and Fees)" are required to be paid to an insured, and emphasized that the insured did not allege that he had actually incurred any such amounts that the insurer had not paid) (*appeal pending*).  Because the Complaint here does not allege that Plaintiff incurred

8

Vehicle Sales Tax (*see* Compl.), there is no "applicable sales tax" to which she is entitled under the express Policy terms.

Indeed, the Policy language here is entirely consistent with the Missouri statute discussed above, which only provides a credit or refund for Vehicle Sales Tax when it has actually been *incurred* by the insured (*i.e.,* when a replacement vehicle has been purchased that has required payment of Sales Tax). Here, again, **Plaintiff never alleges that she actually paid any Vehicle Sales Tax** after the loss. Accordingly, Plaintiff has failed to make any allegation that would give rise to standing. *See Duqum*, 2016 WL 3683001, *3-6 (affirming dismissal of, *inter alia*, breach of contract claim where plaintiffs failed to allege any "actual or imminent injury" but, rather alleged only an "increased risk" for identity theft as a result of defendant's alleged failure to secure their personal financial information).[9]

While Plaintiff styled her Complaint as a putative class action, that does not change the standing requirements here.[10] Because Plaintiff lacks standing to bring her individual claim for breach of contract, she also lacks standing to bring this claim on behalf of the proposed class, and the entire Complaint should be dismissed.

## II. Pursuant To Fed. R. Civ. P. 12(b)(6), The Court Should Also Dismiss Plaintiff's Complaint Because The Policy Does Not Require Payment Of Vehicle Sales Tax Under The Facts Alleged Here.

Even if Missouri law did impose an independent obligation for an insurer to pay Vehicle Sales Tax, and even if Plaintiff had standing to bring this action, Plaintiff's claim still fails as a matter of law because: (1) the Policy does not require payment of the actual cash value of the

---

[9] *See also McClain*, 424 F.3d at 732-34 (where plaintiffs did not allege that they actually sought to purchase homeowners insurance from defendant, they lacked standing to bring claims alleging discriminatory underwriting practices because they failed to allege that they suffered a "direct injury" that was "'fairly traceable to the challenged [conduct] of the defendant.'") (internal citation omitted).

[10] *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

9

insured vehicle in connection with a loss; and (2) even if it did, the term "actual cash value" does not include Vehicle Sales Tax.

### A. The Policy Requires Payment For "*Loss To [A] 'Covered Auto*'"—Not Actual Cash Value, And The Term "ACV" Reflects The Limit Of Liability Rather Than The Contractual Payment Obligation.

Plaintiff argues that there was a breach of contract because Vehicle Sales Tax allegedly constitutes part of the actual cash value amount that Esurance purportedly "promise[d]" to pay to Plaintiff following the "total loss" to her insured vehicle. (*See* Compl., ¶¶ 1-4, 20-21.) This argument mischaracterizes the Policy, which has a coverage provision obligating Esurance to pay for "a sudden, direct, and accidental '*loss*' to: . . . *'[y]our'* '*covered auto,*'" rather than "actual cash value." (Policy, **Ex. 1**, p. 13) (bold and italics in original). It is well-settled that mere legal conclusions in a complaint do not prevail over the express terms of the relevant agreement for purposes of a motion to dismiss a breach of contract action. *See Donovan v. Six & Geving Ins., Inc.*, No. 16-01087, 2016 WL 10637130, *1-2 (W.D. Mo. Dec. 28, 2016) (in granting defendant insurer's motion to dismiss where the express language of the insurance policy at issue showed that defendant was not a party to the contract despite Plaintiff's contradictory allegations in the complaint, the court stressed: "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.") (internal citations omitted).

Indeed, any focus on "actual cash value" here is misguided, because that term merely measures the *limit of liability* under the Policy, not the underlying payment obligation. The express language of the Policy limits Esurance's liability to the **_lesser of_** the:

A. [L]imit of liability shown on '*your*' Declarations page;

B. Actual cash value of the stolen or damaged property;

10

> C. Amount necessary to repair the property to its pre-loss physical condition; <u>or</u>
>
> D. Amount necessary to replace the property with other property of like kind and quality.

(Policy, **Ex. 1**, p. 20) (bold and italics in original) (underline added).

Accordingly, even if it were correct that the term "actual cash value" includes Vehicle Sales Tax (which it does not, *see below*), that would prove nothing because "actual cash value" is not the amount that Esurance promised to pay in the event of a covered loss. *See Coleman v. Garrison Prop. & Cas. Ins. Co.*, No. 20-1480, 839 Fed. Appx. 20 (7th Cir. Mar. 10, 2021). In *Coleman*, decided last year by the Northern District of Illinois[11] and just affirmed by the Seventh Circuit, plaintiff alleged that the defendant insurer breached the automobile policy by paying for a total loss without including Vehicle Sales Tax. Affirming dismissal, the Seventh Circuit stressed that, as here, the plaintiff confused the insurer's **payment obligation** (*i.e.,* "Defendants will pay for 'loss' to a covered vehicle") with ***a measurement of the limit of liability*** (*i.e.,* "ACV"): "a limit on liability is the most that an insurer will pay its policyholder, not the amount that the insurer promises to pay." *Id*.

Since the *Coleman* trial court dismissal, numerous other courts have dismissed breach of contract claims virtually identical to the one here involving Vehicle Sales Tax and/or Registration Fees,[12] emphasizing the distinction between the ***payment obligation*** under an automobile policy (*i.e.*, "loss") versus the ***limit of liability*** (*i.e.*, "ACV"). *See Sigler v. GEICO Cas. Co.*, 967 F.3d 658, 660-61 (7th Cir. 2020) (affirming dismissal) ("The Limit of Liability section of the policy doesn't promise to pay [Vehicle Sales Tax] regardless of whether the insured incurs them; it simply describes the *most* that [the insurer] will pay in the event of a

---

[11] *See Coleman v. Garrison Prop. & Cas. Ins. Co.*, No. 1:19-cv-01745, 2020 U.S. Dist. LEXIS 16439, *10 (N.D. Ill. Jan. 30, 2020).

[12] "Registration Fees" include title, transfer, and/or other fees associated with the purchase of a vehicle.

11

covered loss.… [Plaintiff] argues that the policy's 'silence' on whether he is entitled to payment for [Vehicle Sales Tax] he did not incur should be interpreted in favor of coverage because [the insurer] cannot point to unambiguous language that *excludes* these particular costs. That gets things backward. Analysis of exclusions does not come into play unless these costs are encompassed within [the insurer's] basic coverage grant in the first instance….") (emphasis in original) (internal citation omitted);[13] *Sylvester v. Depositors Ins. Co.*, 481 F. Supp. 3d 412, 421 (E.D. Pa. 2020) (dismissing complaint with prejudice because "the insurance policies here do not promise to pay [ACV]; instead, the term 'actual cash value' here only operates as a limit. Because Defendants are obligated to pay for loss, not the [ACV], by the plain and unambiguous terms of the contract, they do not have to pay the costs and fees associated with replacing the vehicles.") (*motion to alter judgment currently pending*); *Barlow v. GEICO*, No. 1:19-CV-03349, 2020 U.S. Dist. LEXIS 179455, *10-11 (E.D.N.Y. Sept. 29, 2020) (finding that the policy did not require payment of Vehicle Registration Fees: the plaintiffs "'mistake[] a liability ceiling for a floor [but] [t]he Limit of Liability section of the policy doesn't promise to pay these costs regardless of whether the insured incurs them; it simply describes the most that [the insurer] will pay in the event of a covered loss.'") (internal citations omitted).

The same reasoning by the courts in *Coleman*, *Sigler*, *Pappas*, *Connors*, *Sylvester,* and *Barlow* applies here. Esurance simply agreed to pay for loss to the 2002 RAV4. Plaintiff's suggestion that even though she has failed to allege that she actually incurred any Vehicle Sales

---

[13] *See also Pappas,* 2020 U.S. Dist. LEXIS 106832, *11 (in dismissing a putative class complaint, the court emphasized: "this policy does not promise repair or replacement [but, rather] caps the [insurer's] liability at the actual cash value of [the insured's] vehicle at the time of the collision."); *Connors v. Progressive Universal Ins. Co.*, No. 20 CV 7342, 2021 U.S. Dist. LEXIS 83220, *4-5 (N.D. Ill. Apr. 30, 2021) ("A 'limit of liability' . . . describes 'the *most*' that an insurance company will pay in the event of a covered loss" . . . [Plaintiff's] treatment of the limit-of-liability provision as an obligation to pay is wrong, and [the insurer] did not breach the contract by failing to reimburse her for the full cost of replacing her car.") (emphasis in original) (internal citations omitted) (*motion to dismiss amended complaint pending*).

Tax that would be "applicable Sales Tax" to which she may be entitled under the "Payment of Loss" section of the Policy,[14] one measurement of the Policy's limit of liability (ACV) somehow obligates payment of such tax is legally erroneous.

### B. Even If The Policy Does Require Payment Of "Actual Cash Value," This Does Not Include Vehicle Sales Tax Here.

Even if Plaintiff were correct that Esurance must pay ACV for her total loss based on the contractual limit of liability, nothing in the Policy mandates payment of Vehicle Sales Tax under the circumstances alleged here. As demonstrated above, the Policy unambiguously specifies one measure of the limit of liability as the "[a]ctual cash value *of the stolen or damaged property*." (*See* Policy, **Ex. 1** hereto, p. 20, emphasis added.) Once again, the "damaged property" clearly references the value of the 2002 Toyota RAV4 and not Vehicle Sales Tax.

To the extent that Vehicle Sales Tax bears any relevance to Plaintiff's claim here, it would be associated with *replacement* of the total loss vehicle, which is certainly not at issue here, rather than ACV. (*See* Compl., ¶¶ 17-18) (sales tax is a required element of "the cost to purchase [a] similar vehicl[e] with similar conditions and mileage."). Thus, a straightforward application of the Policy here does not mandate payment for Vehicle Sales Tax as a matter of law, which has also been recognized by several courts in various jurisdictions. *See Wilkerson v. Am. Family Ins. Co.,* 997 F.3d 666, 670-71 (6th Cir. 2021) (affirming dismissal of nearly identical putative class action, the Sixth Circuit rejected plaintiff's contention that "ACV" and "replacement cost" are the same: "The policy…already incorporates a liability limit tied to the costs of a replacement car that is separate from the liability limit tied to the damaged car's actual cash value. . . .Interpreting [ACV] to mean replacement costs minus depreciation renders these complimentary causes incoherent….Interpreting '[ACV]' to mean what it '[o]rdinarily means—

---

[14] *See supra*, at pp. 7-9.

13

market value—sensibly gives both of these limits-of-liability clauses effect.");[15] *see also Singleton v. Elephant Ins. Co.*, 953 F.3d 334, 337-39 (5th Cir. 2020) (affirming dismissal; finding that the "unambiguous" policy language did not require payment of Vehicle Sales Tax); *Cody v. Allstate Fire & Cas. Ins. Co.*, 3:19-cv-01935, 2021 U.S. Dist. LEXIS 20406, *24 (N.D. Tex. Feb. 3, 2021) (granting dismissal with prejudice, the court held that the unambiguous language of the policies at issue did not require the defendant insurers to pay "the required taxes…to purchase a replacement vehicle," and stressed that the court "[could not] assert 'additional provisions into the [insurance] contract.'") (internal citations omitted) (*appeal pending*); *Thompson v. Progressive Universal Ins. Co.*, 420 F. Supp. 3d 867, 872 (W.D. Wis. 2019) (dismissing breach of contract claim; finding that "market value," as used in the policy as a consideration to be used in calculating ACV, is not ambiguous and "does [not] require reimbursement of [Vehicle Sales Tax] that might be incurred in actually purchasing a replacement vehicle.").

Indeed, consistent with paying for ACV based on "your covered auto," the Plaintiff's Policy expressly lists the "physical condition" of the damaged vehicle as a relevant consideration to be considered in calculating the ACV amount.  (*See* Policy, **Ex. 1**, p. 20.)  Such consideration does not include the Vehicle Sales Tax associated with purchasing a ***replacement*** vehicle. Moreover, the plain language of Plaintiff's Policy lists the limit of liability alternatives in the disjunctive—that is, as wholly separate potential ways to measure the limit of liability for a given loss.  Accordingly, the alternatives cannot be read to mean the same thing.  *See Pappas*, 2020

---

[15] *See also Williams-Diggins v. Permanent Gen. Assu. Corp.*, No. 108846, 2020 Ohio App. LEXIS 2867, *19 (Ohio Ct. App. Aug 6, 2020) (affirming dismissal of similar putative class action, the court stressed: "The [p]olicy did not define actual cash value as the amount it would cost to replace [the insured's] vehicle….[The insured's] continued attempt to conflate replacement costs with the actual cash value of the vehicle so as to include the payment of [Vehicle Sales Tax]….is not a reasonable interpretation of the [p]olicy.")

U.S. Dist. LEXIS 106832, *10 (stressing that the "policy set[] off the cost of replacement as an alternative and different way to measure the limit of the amount due," and that the policy did not "define [ACV] to be interchangeable with the replacement cost of the vehicle"); *see also Chicago, R.I. & P.R. Co. v. Furniture Forwarders of St. Louis, Inc.*, 272 F. Supp. 62, 63-64 (E.D. Mo. 1967) (stressing "[i]t is clear . . . the [word] 'or' presents alternatives . . . .") Plaintiff's contention that "ACV" is synonymous with "replacement cost" would render these two alternate limits redundant and superfluous, which directly contravenes Missouri law. *See, e.g., Jaudes v. Progressive Preferred Ins. Co.,* 11 F. Supp. 3d 943, 949 (E.D. Mo. 2014) ("in interpreting an insurance contract [under Missouri law], the court must 'endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant.'") (internal citation omitted). Accordingly, Plaintiff's claims fail as a matter of law because—as in *Wilkerson*, *Williams-Diggins*, *Singleton*, *Cody, and Thompson*— Plaintiff has been fully compensated for all amounts owed under the express terms of the Policy, and replacement cost is not validly at issue in this matter.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests the Court to dismiss Plaintiff's Complaint, in its entirety, with prejudice.

Respectfully submitted,

/s/ Deborah J. Campbell
Deborah J. Campbell, No. 6255705
DENTONS US LLP
One Metropolitan Square, Suite 3000
St. Louis, Missouri 63102
Phone: (314) 259-5843
Facsimile: (314) 259-5959
deborah.campbell@dentons.com

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a copy of the foregoing was served this 15th day of July, 2021, via the Court's electronic notification system on the following:

Martin L. Daesch
Jesse B. Rochman
Craig W. Richards
OnderLaw, LLC
110 E. Lockwood, 2nd Floor
St. Louis, MO 63119
daesch@onderlaw.com
rochman@onderlaw.com
richards@onderlaw.com


                                          /s/ Deborah J. Campbell