# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| VICKIE RAWLINS, on behalf of herself and all others similarly situated,    )<br>)<br>)<br>Plaintiff,    )<br>)<br>v.    )<br>)<br>ESURANCE PROPERY AND CASUALTY    )<br>INSURANCE COMPANY,    )<br>)<br>Defendant.    )<br> | No. 4:21-CV-660 RLW |

## MEMORANDUM AND ORDER

Vickie Rawlins brings this suit against Esurance Property and Casualty Insurance Company ("Esurance" or "Defendant") for breach of an insurance contract. Plaintiff Rawlins brings suit on behalf of herself and those similarly situated. This matter is before the Court on Esurance's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 8). Plaintiff opposes the motion, which is fully briefed and ripe for review. For the reasons that follow, the Court denies Esurance's motion to dismiss for failure to state a claim.

### *I. Background*

On February 12, 2021, Plaintiff filed a Class Action Petition in the Circuit Court of St. Louis County, Missouri. In her state court petition (hereinafter "Complaint"), Plaintiff alleges Esurance breached the terms of its automobile insurance policy by failing to include sales tax when it made a loss claim payment. According to the Complaint, Esurance issued Plaintiff a Personal Auto Policy (the "Policy"), which provided that in the event Plaintiff's covered vehicle sustained loss, Esurance would pay for the loss "in money or repair or replace the damaged or stolen

property."[1]   (ECF No. 4 at 3).   The Complaint further alleges the Policy provides that in the event Esurance pays for the loss in money, the payment "will include the applicable sales tax for the damaged or stolen property." Id.

According to Plaintiff, she insured a 2002 Toyota RAV4 under the Policy.   On March 30, 2016, the insured vehicle sustained loss or damage. Plaintiff filed a claim for property damage. Plaintiff alleges Esurance determined her vehicle to be a total loss.

According to the Complaint, Esurance determined the value of Plaintiff's 2002 Toyota RAV4 to be $5,788.00, and the applicable sales tax on the adjusted vehicle to be $411.70.   She alleges her vehicle's valuation was calculated by a third-party vendor, CC Information Services, Inc. ("CC"). Plaintiff attached a copy of CC's valuation report to the Complaint.   (ECF No. 4, Ex. 1 at 44).   According to Plaintiff, she was paid the "adjusted vehicle value" of $5,788.00, plus $14.00 for fees, minus a $500.00 deductible, for a total money payment of $5,302.00.   Esurance did not include any sales tax in its payment.   Plaintiff claims that by failing to include sales tax in making payment for loss, Esurance breached its contract with her.   Plaintiff brings one count against Defendant for Breach of Contract.

Plaintiff seeks to bring a putative class action against Esurance.   She asks that she be allowed to represent the following class of insureds:

> All Missouri insureds, under a policy issued by Esurance covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss, who, within the applicable statute of limitations prior to the filing of this lawsuit through the date of the certification Order, submitted a first-party property damage claim determined by Esurance to constitute a covered loss claim and where the loss claim payment did not include sales tax.

(ECF No. 4 at 4).

---

[1] A copy of the Policy is attached to the Complaint.   See ECF No. 4, Ex. 1.

Esurance removed the state action to this Court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332, 1441 and 1453.[2] Defendant did not file an answer to the Complaint, but rather filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Esurance moves to dismiss based on the following arguments: (1) under a Missouri statute, an insured never has to pay sales tax on a replacement vehicle following a total loss; (2) Plaintiff lacks standing to sue because she does not allege she paid any sales tax; (3) the Policy requires Defendant to pay for loss, not Actual Cash Value, which is a limit on liability and not a contractual obligation; (4) even if the Policy required payment of Actual Cash Value, sales tax would not be included in the loss calculation.

## II.     Legal Standard

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Blomker v. Jewell, 831 F.3d 1051, 1055 (8th Cir. 2016) (quotation omitted). The facts alleged must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

---

[2] Plaintiff is a citizen of Missouri. Defendant is an Illinois corporation, with its principal place of business in Illinois. The proposed class exceeds 5,000 persons and the amount in controversy exceeds $5 million. The Court, therefore, has diversity subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id. at 555–56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however. Iqbal, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id.

### III. Discussion

#### A. Breach of Contract Claim

Before addressing the standing issue and the implications of a Missouri statute, the Court will first address whether the Complaint states a claim for breach of contract.

To state a claim for breach of contract under Missouri law, Plaintiff must allege facts demonstrating (1) the existence and terms of a contract, (2) that Plaintiff performed pursuant to the contract, (3) that Defendant breached the contract, and (4) that Plaintiff suffered damages resulting from the breach. Fuller v. Partee, 540 S.W.3d 864, 871 (Mo. Ct. App. 2018). According to Missouri law, a court interpreting an insurance policy should "give[ ] the policy language its plain meaning, or the meaning that would be attached by an ordinary purchaser of insurance." Seaton v. Shelter Mut. Ins. Co., 574 S.W.3d 245, 247 (Mo. 2019) (quoting Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins., 531 S.W.3d 508, 511 (Mo. 2017)). Further, courts "should not interpret policy provisions in isolation but rather evaluate policies as a whole." Ritchie v. Allied Prop. & Cas. Ins. Co., 307 S.W.3d 132, 135 (Mo. 2009). When an insurance policy is "clear and unambiguous," the court must enforce the policy as written. Seaton, 574 S.W.3d at 247. If,

4

however, "the policy is ambiguous, . . . any ambiguity must be resolved against the insurer-drafter." Ballas Nails & Spa, LLC v. Travelers Cas. Ins. Co. of Am., 511 F. Supp. 3d 978, 981 (E.D. Mo. 2021) (quoting Allen v. Cont'l W. Ins. Co., 436 S.W.3d 548, 554 (Mo. 2014)). "Language is ambiguous if it is reasonably open to different constructions," or "when there is duplicity, indistinctness, or uncertainty in [its] meaning." Johnson v. Safeco Ins. Co. of Illinois, 983 F.3d 323, 330 (8th Cir. 2020) (quoting Burns v. Smith, 303 S.W.3d 505, 509 (Mo. 2010) and Seaton, 574 S.W.3d at 247).

There appears to be no dispute that the Complaint alleges the first two elements for breach of contract. In moving for dismissal, Esurance argues Plaintiff fails to adequately allege that it breached the Policy, or that she was damage by any such breach.

Under its basic terms, the Policy provides that if the insured pays the premium, Esurance agrees to pay for loss to the covered vehicle. More specifically, the Policy states:

> Subject to the limits of liability, if "you" pay the premium for Collision Coverage, "we" will pay for a sudden, direct, and accidental "loss" to … "[y]our" "covered auto" for which Collision Coverage has been purchased … .

(ECF No. 4, Ex. 1 at 16.)

"Loss" is defined under the Policy to include "sudden, direct, and unintended physical damage" or "theft." (Id. at 5). If there is a loss, under the Payment of Loss provision, Esurance may elect to "pay for the 'loss' in money or repair or replace the damaged or stolen property." (Id. at 24). Importantly, if Esurance "pay[s] for 'loss' in money, [its] payment will include the applicable sales tax for the damaged or stolen property." (Id.) (emphasis added).

The Policy does have limits on the amount for which Esurance can be liable. Under its terms, the Policy limits Esurance's liability to the lesser of the following:

> A. The limit of liability shown on [the] Declarations page;
> B. Actual cash value of the stolen or damaged property;

5

>C. Amount necessary to repair the property to its pre-loss physical condition; or
>D. Amount necessary to replace the property with other property of like kind and quality

(ECF No. 4, Ex. 1 at 23). In addition, "[a]ny payment for damaged property will be reduced by the applicable deductible shown on [the] Declarations page and by the salvage value if [the insured or owner] retain[s] the salvaged property." (Id.)

For purposes of the Motion to Dismiss, the parties do not dispute Plaintiff had a vehicle covered under the Policy that sustained a "loss," or that Plaintiff filed a claim for property damage under the Policy, and Esurance determined her vehicle to be a "total loss." (ECF No. 4 at 3). It is also undisputed that Esurance elected not to repair or replace Plaintiff's vehicle, and instead it paid for the loss in money. According to the Complaint, Plaintiff was paid the "adjusted vehicle value" of her 2002 RAV4, $5,788.00, plus $14.00 for fees, minus a $500.00 deductible, for a total payment of $5,302.00. (Id.) It is undisputed Esurance did not include sales tax when making its payment. Plaintiff claims that by failing to include sales tax in making payment for loss, Esurance breached its contract with her.

In moving to dismiss, Esurance argues Plaintiff has misconstrued the Policy. Esurance argues Plaintiff is alleging there was a breach of contract because she was entitled to "actual cash value" for her RAV4, and vehicle sales tax must be included in an "actual cash value" calculation. (See Def.'s Memo. Supp. Mot. Dismiss, ECF No. 9 at 11). According to Esurance, Plaintiff was not entitled to "actual cash value" for her car, which is merely one measurement for the limit of liability under the Policy, but even if she were, "actual cash value" does not include sales tax. Esurance characterizes Plaintiff's "focus on 'actual cash value'" as "misguided, because that term merely measures the limit of liability under the Policy, not the underlying payment obligation." (Id.)

6

The Court agrees that focus on "actual cash value" would be misguided, but not for the reason Esurance asserts. The Complaint does not allege that Esurance's obligation to pay sales tax arises because Esurance elected to pay "actual cash value," and sales tax is part of the "actual cash value" calculation. Rather the Complaint alleges Esurance breached the Policy's Payment of Loss provision, which provides if Esurance "pay[s] for 'loss' in money, [its] payment will include the applicable sales tax for the damaged or stolen property." (ECF No. 4, Ex. 1 at 24). In other words, in the event Esurance elects to pay for loss in money, which Esurance did here, it must pay sales tax, which it did not do. Plaintiff does not rely on the "actual cash value" liability limitation at all. The Complaint explicitly alleges, "Nothing in the Policy unambiguously excludes sales tax or contradicts Defendant's promise to pay sales tax where it pays for the loss in money. To the extent the applicable limitation on liability is the vehicle's actual cash value, such limitation does not operate to exclude or subvert Defendant's explicit and unambiguous promise to include payment for sales tax in its loss payments." (ECF No. 4 at 4). Esurance has misconstrued the allegations in the Complaint.

The cases to which Esurance cites in support of its argument that "actual case value" does not include sales tax are distinguishable from the case at bar. In moving to dismiss, Esurance urges the Court to look to the reasoning found in a number of cases. See Coleman v. Garrison Prop. & Cas. Ins. Co., 839 F. App'x 20 (7th Cir. 2021), Sigler v. GEICO Cas. Co., 967 F.3d 658, 660–61 (7th Cir. 2020), Connors v. Progressive Universal Ins. Co., No. 20 CV 7342, 2021 WL 4951523, at *3 (N.D. Ill. Oct. 25, 2021), Sylvester v. Depositors Ins. Co., 481 F. Supp. 3d 412, 421 (E.D. Pa. 2020), amended in part, No. CV 20-1322, 2021 WL 3668000 (E.D. Pa. Aug. 19, 2021), Barlow v. Gov't Emps. Ins. Co., No. 19CV3349PKCRML, 2020 WL 5802274, at *4 (E.D.N.Y. Sept. 29, 2020), and Pappas v. Auto Club Ins. Ass'n, No. 20 CV 983, 2020 WL 3303004,

7

at *2 (N.D. Ill. June 18, 2020).   But none of the polices at issue in these cases involved Payment of Loss language similar to the language at issue here. These cases all address whether sales tax is included in the calculation of "actual cash value," which is not the issue in this case.  Id.

Instead, this case is nearly identical to Romaniak v. Esurance Property & Casualty Insurance. Co., No. 1:20-CV-02773, 2021 WL 4171040, at *6 (N.D. Ohio Sept. 14, 2021).  In Romaniak, the district court examined the same issue under a nearly identical policy issued by Esurance. The Romaniak plaintiff also did not rely on the meaning of "actual cash value" in alleging breach of contract for failing to pay sales tax.  Like here, the policy at issue contained "an express promise to pay the applicable sales tax for the damaged property if Esurance pays for the loss in money." Id.   Faced with a motion to dismiss, the district court in Romaniak held that the Payment of Loss provision, read in conjunction with the Liability Limitation provision, plainly meant Esurance would pay for sales tax, which Esurance did not do. The court reasoned:

> When the Court reads the plain meaning of [the] two provisions together, they provide that Esurance's limit of liability is the "actual cash value"—however that phrase may be defined—of [the plaintiff]'s totaled vehicle, and further provide that, should Esurance pay [the plaintiff] in money for her loss, Esurance's payment will include the applicable sales tax for her totaled 2007 Pontiac G6 GT …. The Court need not decide which definition of "actual cash value" applies to [the plaintiff]'s Policy because Esurance's limitation of its liability to the "actual cash value" is accompanied by Esurance's separate and express promise to pay applicable sales tax for the damaged ... property when Esurance pays for a loss in money. [Plaintiff] alleges that Esurance paid her in money for her loss, but that Esurance's payment did not include any sales tax for her damaged vehicle. … Thus, the Court concludes that [Plaintiff] has plausibly alleged a claim for breach of contract.

Id. at 4 (internal citations omitted).   The Court agrees with the reasoning of the Court in Romaniak and finds the Complaint sufficiently alleges Esurance breached its contract with Plaintiff.

Next, Esurance argues the Complaint fails to state a claim for breach of contract because Plaintiff did not suffer any damages, as the Complaint does not allege that she paid any sales tax. Defendant argues the "express language" of the Policy only requires payment of sales tax when

8

the sales tax is "applicable," and according to Defendant, "applicable" means only after sales tax has actually been paid. Defendant argues because Plaintiff failed to allege that she paid tax on a replacement vehicle, there was no "applicable sales tax," and she did not incur any damages for which Esurance would be obligated to pay.

Defendant cites two cases in support of its argument that "applicable" only refers to sales tax that has already been paid, Ransom v. FIA Card Services, N.A., 562 U.S. 60 (2011), and Pappas v. Auto Club Insurance Association, 2020 WL 3303004 (N.D. Ill. June 18, 2020). Again, these cases are distinguishable from the case at hand. In Ransom, the term "applicable" was used in an entirely different context. The Supreme Court addressed what is an "applicable expense" under the Bankruptcy Code, not what is an applicable sales tax for a damaged vehicle under an insurance policy. 562 U.S. at 69. The Court declines to look at the definition of "applicable" in isolation or within the context of the Bankruptcy Code. Ritchie, 307 S.W.3d at 134 (courts "should not interpret policy provisions in isolation but rather evaluate policies as a whole.")

As for Pappas, the district court was asked to interpret the meaning of "applicable" in a statute that provided for the reimbursement of "applicable sales taxes and transfer and title fees incurred on account of the purchase or lease of the [new] vehicle." 2020 WL 3303004, at *2 (brackets in original). The context in which the term "applicable" was used in Pappas is different than the context in which it was used in the Policy. The statute at issue in Pappas used the term "applicable sales taxes" in conjunction with the past tense verb "incurred," in other words, what taxes had been paid. The Policy provision at issue here uses no such verb. Under the Policy, Esurance must pay "applicable sales tax for the damaged or stolen property." (ECF No. 4, Ex. 1 at 24). There is nothing to suggest that the tax is for a replacement vehicle, or that the tax must already have been paid.

The court in Romaniak addressed the same issue and held that under the same express language, the term "applicable sales tax" in the Payment of Loss provision refers to sales tax for the damaged vehicle, not to sales tax paid on a replacement vehicle. Like the court in Romaniak, this Court finds a money payment under the Policy must include the applicable sales tax for – "meaning connected to" – the damaged or stolen property, not sales tax paid for a replacement vehicle. Romaniak, 2021 WL 4171040, at *5. Defendant's interpretation is contrary to the plain meaning of the language in the Policy.

In its Reply Memorandum, Defendant asserts Plaintiff is now asking for the sales tax she incurred at the time of her covered vehicle's initial purchase. Esurance argues this would be nonsensical and untenable because such calculation would be dependent on the insured's original acquisition of the vehicle, which may have occurred many years earlier. Nowhere does Plaintiff define "applicable sales tax for the damaged or stolen property" as the sales tax she paid when she acquired her covered vehicle.

The Complaint does not allege that Plaintiff is entitled to the sales tax she paid on her 2002 RAV4, but rather it alleges she is entitled to $411.70, based on CC's "Report Summary," which she attached to the Complaint. CCC valued Plaintiff's 2002 RAV 4 at $5,788.00, which it labeled as the "Adjusted Vehicle Value."[3] (ECF No. 4, Ex. 1 at 44). CC calculated "Vehicular Tax" at a rate of 7.11%, which amounted to $411.70. (Id.) CC noted the "Tax reflects applicable state, county and municipal taxes." Id. (emphasis added). This is the amount Plaintiff seeks: $411.70

---

[3] The Court need not determine whether this is "actual cash value" or the "amount necessary to replace the property with other property of like kind and quality." (See ECF No. 4, Ex. 1 at 23). As Defendant has articulated, these terms refer to Esurance's Liability Limits, not the amount of loss. Under the Policy, Esurance is obligated to pay for a loss in money or to repair or replace. If it pays in money, the payment will include applicable sales tax, irrespective of how the liability limits are calculated. (Id. at 24).

10

in applicable sales tax for 2002 RAV4, the damaged property. The Court finds Plaintiff has alleged damages, in that the Complaint alleges Plaintiff was entitled to $411.70 in applicable sales tax for her damaged vehicle, based on the calculated value of her 2002 RAV4, and Esurance failed to pay that amount, as it was required to do under the terms of the Policy.

In sum, the Complaint contains factual allegations for all four elements of a breach of contract claim under Missouri law.   Plaintiff states a claim for breach of contract.

### B.      Mo. Rev. Stat. § 144.027 Does Not Apply, and Plaintiff Had Standing to Sue

Esurance makes two further arguments for dismissal, neither of which the Court finds persuasive. First, Esurance argues there is no Missouri statute or regulation that imposes an independent obligation for an insurer to pay vehicle sales tax and, in fact, there is a Missouri statute, Mo. Rev. Stat. § 144.027, that enables an insured to receive a sales tax credit from the Missouri Department of Revenue ("DOR"). Under § 144.027, if the insured purchases a replacement vehicle following a total loss, he or she may be entitled to a tax credit from the DOR for sales tax.[4] Therefore, according to Esurance, because an insured never has to pay any vehicle sales tax in connection with a total loss claim, Plaintiff's breach of contract claim is precluded by Missouri law. The Court does not agree.

---

[4]Section 144.027 provides:

> When a motor vehicle . . . for which all sales or use tax has been paid is replaced due to theft or a casualty loss in excess of the value of the unit, the director shall permit the amount of the insurance proceeds plus any owner's deductible obligation, as certified by the insurance company, to be a credit against the purchase price of another motor vehicle, . . . which is purchased or is contracted to purchase within one hundred eighty days of the date of payment by the insurance company as a replacement motor vehicle, . . . .

Mo. Rev. Stat. § 144.027.

11

Plaintiff's claim is not based an obligation Esurance had under a Missouri statute or regulation; it is based on the language of the Policy. Dollard v. Depositors Ins. Co., 96 S.W.3d 885, 890 (Mo. Ct. App. 2002) (statute did not override the clear language of the insurance policy which provided an additional benefit to the insureds). And the fact that an insured may be entitled to a sales tax credit on a replacement vehicle does not change the fact that under the terms of the Policy, Esurance expressly agreed to pay applicable sales tax <u>for the damaged property</u>, not for a replacement vehicle, when it paid for a loss in a money payment.

The Payment of Loss provision contains no reference to a replacement vehicle. Like the Court in Romaniak, this Court a money payment under the Policy must include the applicable sales tax <u>for</u> – "meaning connected to" – the damaged or stolen property. Romaniak, 2021 WL 4171040, at *5. The Court will not read the words "replacement vehicle" into this provision of the Policy. There is no obligation under the Policy that the insured purchase a replacement vehicle to be entitled to a loss payment or the applicable sales tax for her damaged car. There is no such precondition. Furthermore, Plaintiff is not attempting to rewrite Mo. Rev. Stat. § 144.027 to add a "coordination of benefits" provision in the statute, as Defendant suggests. She is arguing the statute does not apply under the facts as alleged in her Complaint.[5] The Court agrees.

Finally, Defendant maintains Plaintiff lacks standing in this case because she did not pay any sales tax and, therefore, she did not suffer an injury. As discussed above, the "applicable

---

[5] Even if the Court were to find Defendant's argument persuasive, which it does not, Defendant still would not be entitled to dismissal based on Mo. Rev. Stat. § 144.027. Under the statute, an insured is not automatically entitled to a tax credit, even if the insured purchases a replacement vehicle. For example, an insured may choose to purchase a replacement vehicle out of state, or beyond the 180-day window. The fact that Missouri allows some tax relief for persons suffering the loss of their vehicles does not change Esurance's obligations under its Policy. "Parties are free to bargain for greater insurance coverage within an insurance policy than is provided for by state regulations." Romaniak, 2021 WL 4171040, at *5.

sales tax" is for the damaged or stolen property, not for a replacement vehicle. There is nothing in the Policy to support Defendant's argument that a tax is only applicable after it has been paid. Whether Plaintiff paid sales tax on a replacement vehicle is irrelevant. Plaintiff alleges she did not receive the benefit of the bargain when Defendant failed to pay her the applicable sales tax for her 2002 RAV4, the damaged property, which was calculated and noted on CC's Report Summary. The Court concludes Plaintiff adequately pleads an injury-in-fact. See Romaniak, 2021 WL 4171040, at *5.

### IV.     Conclusion

In sum, the Court finds the Complaint states a breach of contract claim. The Complaint contains sufficient factual allegations that Esurance breached the terms of the Policy, and Plaintiff suffered damages thereby. The Court further finds Mo. Rev. Stat. § 144.027 does not apply, and Plaintiff has standing to sue, in that Plaintiff adequately pleads an injury-in-fact. Defendant's Motion to Dismiss lacks merit.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Esurance Property and Casualty Insurance Company's Motion to Dismiss is **DENIED.**   [ECF No. 8].

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this   26th   day of January, 2022.